United States District Court
for the
Southern District of New York

| | |
|---|---|
| CIT BANK, N.A. | ) |
| | ) Civil Action No. 18-cv-1511 |
| Plaintiff | ) |
| | ) |
| v. | ) **COMPLAINT** |
| | ) |
| | ) |
| RAMON NERIS, NEW YORK CITY | ) |
| ENVIRONMENTAL CONTROL BOARD, | ) |
| NEW YORK CITY PARKING | ) |
| VIOLATIONS BUREAU, NEW YORK | ) |
| CITY DEPARTMENT OF HOUSING | ) |
| PRESERVATION & DEVELOPMENT, | ) |
| | ) |
| Defendant(s) | ) |
| | ) |

Plaintiff, by its attorneys Gross Polowy, LLC, for its complaint against the Defendants allege as follows:

## INTRODUCTION

1. This action is brought pursuant to New York Real Property Actions and Proceeding Law (RPAPL) Article 13, to foreclose a Mortgage encumbering 64 Clinton Place, Bronx, NY 10453, together with the land, buildings, and other improvements located on the Property ("Property"). The legal description of the Property is attached as Schedule B.

## PARTIES

2. Plaintiff is a national banking association with its principal executive office at 75 North Fair Oaks Avenue, Pasadena, CA 91103. Plaintiff is the owner and holder of the subject Note and Mortgage or has been delegated authority to institute this Mortgage foreclosure action by the owner and holder of the subject Note and Mortgage. Attached here as Schedule A is a copy of the original note.

3. Defendant Ramon Neris is a citizen of New York, and the owner of the Property.

4. Defendant New York City Environmental Control Board is a city agency existing under the laws of New York with its principal place of business in 100 Church Street, New York, NY 10001, and the holder of a lien encumbering the Property, which is subject and subordinate to Plaintiff's Mortgage.

5. Defendant New York City Parking Violations Bureau is a city agency existing

under the laws of New York with its principal place of business in 100 Church Street, New York, NY 10001, and the holder of a lien encumbering the Property, which is subject and subordinate to Plaintiff's Mortgage.

6. Defendant New York City Department of Housing Preservation & Development is a city department existing under the laws of New York with its principal place of business in 100 Gold Street, New York, NY 10038, and the holder of a lien encumbering the Property, which is subject to Plaintiff's Mortgage.

7. The Defendants claim an interest or lien encumbering the Property, which is either subordinate to Plaintiff's Mortgage, or paid in full, equitably subordinated, or adverse to Plaintiff's Mortgage. The interest or lien of each defendant is attached as Schedule C.

8. The interest or lien of any governmental entity is attached as Schedule D.

## STATEMENT OF JURISDICTION

9. Federal subject matter jurisdiction exists pursuant to 28 USC §1332 because complete diversity exists among the Plaintiff and the Defendants and the amount in controversy, without interest and costs, exceeds the $75,000.00.

## VENUE

10. Venue is proper pursuant to 28 USC §1391 because the Property is located in this District and a substantial part of the events and omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

11. On or about August 15, 2007, Ramon Neris executed and delivered a Note whereby Ramon Neris promised to pay the sum of $451,250.00 plus interest on the unpaid amount due. The terms of the Note were subsequently modified on December 7, 2016.

12. As security for the payment of the Note Ramon Neris duly executed and delivered a Mortgage, in the amount of $451,250.00 which was recorded as follows.

    Recording Date: October 27, 2008
    CRFN 2008000419881
    City Register of the City of New York, Bronx County

13. The Mortgage was assigned to OneWest Bank, FSB.

14. The Mortgage was subsequently modified by a Loan Modification Agreement executed by Ramon Neris on December 7, 2016 and taxes will be paid on the modified amount.

    CIT Bank, N.A. is formerly known as OneWest Bank, N.A. which is formerly known as

OneWest Bank, FSB.

15. Ramon Neris failed to make payment in accordance with the terms of the Note and Mortgage by not making the payment that was due on June 1, 2017 and subsequent payments.

16. There is now due and owing on the Note and Mortgage the following amounts:

Principal Balance: $428,711.24
Interest Rate: 3%
Date Interest Accrues from: May 1, 2017

There is now further due and owing on said mortgage the following deferred amount:

Deferred Balance: $184,741.12
Interest Rate: 0%

together with late charges, monies advanced for taxes, assessments, insurance, maintenance, and preservation of the Property, and the costs, allowances, expenses of sale, and reasonable attorney's fees for the foreclosure.

17. In order to protect the value of the Property and its rights in the Property, the Plaintiff may have to pay taxes, assessments, water charges, insurance premiums, and other charges. Plaintiff requests that any amount it pays, together with interest, be included in the total amount due.

18. Plaintiff has complied with the notice provision of the Mortgage and RPAPL Section 1304 and filed the information required by RPAPL Section 1306. The Mortgage was originated in compliance with all provisions of Section 595-a of the New York Banking Law and any rules or regulations promulgated thereunder, and, if applicable, Sections 6-l or 6-m of the Banking Law.

19. No action was brought to recover any part of the Mortgage debt or if any such action is pending final judgment for Plaintiff was not rendered and it is the intent of the Plaintiff to discontinue it.

**WHEREFORE, PLAINTIFF DEMANDS**:

a. Judgment determining the amount due Plaintiff for principal, interest, late charges, taxes, assessments, insurance, maintenance and preservation of the Property and other similar charges, together with costs, allowances, expenses of sale, reasonable attorney's fees, all with interest;
b. A referee be appointed to sell the Property at auction to the highest bidder, in accordance with to RPAPL Article 13;
c. The interest of the defendants and all persons claiming by or through them be

    foreclosed and their title, right, claim, lien, interest or equity of redemption to the Property be forever extinguished;
d. The Plaintiff be paid out of the sale proceeds the amounts due for principal, interest, late charges, taxes, assessments, insurance, maintenance and preservation of the Property, and other similar charges, together with costs, allowances, expenses of sale, reasonable attorney's fees, all with interest, and that the sale proceeds be distributed in accordance with to RPAPL Article 13;
e. The property be sold in as is condition, subject to the facts an inspection or accurate survey of the Property would disclose, covenants, restrictions, easements and public utility agreements of record, building and zoning ordinances and violations, and the equity of redemption of the United States of America;
f. Plaintiff may purchase the Property at the sale;
g. A receiver be appointed for the Property, if requested by Plaintiff;
h. A deficiency judgment against Ramon Neris, to the extent allowable by law, for the amount that remains due after distribution of the sale proceeds, unless the debt was discharged in a bankruptcy or is otherwise uncollectable, be granted if requested by Plaintiff;
i. If the Plaintiff possesses other liens against the Property, they not merge with the Mortgage being foreclosed and that Plaintiff, as a subordinate lien holder, be allowed to share in any surplus proceeds resulting from the sale;
j. That the Court award Plaintiff additional relief that is just, equitable and proper.

Dated: January 22, 2018
       Westbury, New York

By:
/SJV/
Stephen J Vargas, Esq.
Attorneys for Plaintiff
900 Merchants Concourse, Suite 412
Westbury, NY 11590
Tel.: (716) 204-1700

## **Schedule A**

Attached here as Schedule A is a copy of the original note. If applicable, certain non-public personal information has been redacted from the attached document.

# FIXED/ADJUSTABLE RATE NOTE
## INTEREST ONLY PERIOD
(1-Year LIBOR Index - Rate Caps)
(Assumable after Initial Period)
( 10 Year Interest Only Period)

**ORIGINAL**

Loan # 127314183

MIN: 100055401273141830

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

August 15, 2007           MIDDLETOWN           Rhode Island
[Date]                    [City]               [State]

64 CLINTON PLACE, BRONX, NY 10453

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 451,250.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.875 %. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**
I will make a payment every month on the first day of the month beginning on October 1, 2007 .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on September 1, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at INDYMAC BANK, F.S.B., P.O. BOX 78826, PHOENIX, AZ 85062-8826
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.
Each of my initial monthly payments will be in the amount of U.S. $ 2,961.33 . This amount may change in accordance with subsection (C) below.

IndyMac Bank
Fixed/Adjustable Rate Note - 1 Yr. Libor Index - Interest Only Period - Multistate          Initials: RN

Page 1 of 5                                                                                  Form 5600
8480830 (0506)          VMP Mortgage Solutions, Inc. (800)521-7291                           6/05

**(C) Monthly Payment Changes**

The First P&I Payment Due Date is   October 1, 2017   .

Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the interest rate I must pay in accordance with Section 4 of this Note or to reflect changes in the unpaid principal of my loan in accordance with Section 5 of this Note. Notwithstanding the provisions of Section 4(C) of this Note to the contrary, prior to the First P&I Payment Due Date the Note Holder will not include in the monthly payment any amount to repay the unpaid principal. Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.

Beginning with the First P&I Payment Due Date, my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 4 and 5 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of   September, 2012   , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

**(B) The Index**

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding   two and 875/1000ths   percentage point(s) (   2.875   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Change Date will not be greater than   12.875   % or less than   2.875   %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than   two and NO/1000ths   percentage point(s) (   2.000   %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than   12.875   %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes.

Loan No: 127314183
8480830 (0506)
Page 2 of 5
R.N.
Form 5600
6/05

If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment. After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000 % of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Loan No: 127314183
8480830 (0508)
Page 3 of 5
R. N.
Form 5600
6/05

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### (A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### (B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Loan No: 127314183
8480830 (0506)

Page 4 of 5

R.N.

Form 5600
6/05

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

*Ramon Neris* _____ (Seal)   _____ (Seal)
RAMON NERIS                -Borrower                                        -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                         -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                         -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                         -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF

_____
WITHOUT RECOURSE
INDYMAC BANK, F.S.B.

*Vincent Dombrowski*
VINCENT DOMBROWSKI
VICE PRESIDENT

Loan No: 127314183

8480830 (0505)                    Page 5 of 5                    Form 5600
                                                                   6/05




ALLONGE TO NOTE

IM F BOC

Loan #: 127314183

For purposes of further endorsement of the following described Note, the allonge is affixed and becomes a permanent part of said Note.

Loan Amount: $478,519.74

Note Date: 15-Aug-07

Borrower(s) Last Name: NERIS

Address: 64 CLINTON PL
BRONX, NY  10453

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

PAY TO THE ORDER OF ONEWEST BANK, FSB, WITHOUT RECOURSE

FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for IndyMac Federal Bank, FSB, successor to IndyMac Bank, F.S.B.

BY: *Sandra Schneider*
NAME: Sandra Schneider
TITLE: Attorney-In-Fact

## ALLONGE TO NOTE

Loan #:   127314183

For purposes of further endorsement of the following described Note, the allonge is affixed and becomes a permanent part of said Note.

| | |
|---|---|
| Loan Amount: | $478,519.74 |
| Note Date: | 15-Aug-07 |
| Borrower(s) Last Name: | NERIS |
| Address: | 64 CLINTON PL<br>BRONX, NY  10453 |

## WITHOUT RECOURSE, PAY TO THE ORDER OF:

BY: *Sandra Schneider* (signature)
NAME:   Sandra Schneider
TITLE:   Vice President, OneWest Bank, FSB

## Schedule B - Legal Description

ALL that certain plot, piece or parcel of land, situate lying and being in the Borough and County of Bronx, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of Clinton Place distant 175 feet westerly from the corner formed by the intersection of the southerly side of Clinton Place and the westerly side of Grand Avenue;

RUNNING THENCE southerly parallel with Grand Avenue, 100 feet;

THENCE westerly parallel with said Clinton Place, 25 feet;

THENCE northerly parallel with Grand Avenue, 100 feet to the southerly side of Clinton Place;

THENCE easterly along the southerly side of Clinton Place, 25 feet to the point or place of BEGINNING.

**Schedule C-Defendants**

Ramon Neris                                         Borrower

## **Schedule D – Defendants**

| | |
|---|---|
| New York City Environmental Control Board | Holder of a lien, see attached |
| New York City Parking Violations Bureau | Holder of a lien, see attached |
| New York City Department of Housing Preservation & Development | Holder of a lien, see attached |

```
                    Environmental Control Board (Fire and Building)

NERIS RAMON
64 CLINTON PLACE
BRONX, NY 10453
ECB Violation No.: 194091087      Date-05/17

Amt: $300.00
----------------------------------------------------------------
```

```
                   JUDGMENTS - All Types Of Liens - Continued

Block: 03207 Lot: 00015                    Control No. 001898328-01
Book Type -- Mechanics Lien                Index # 40
Judgment Type: RELOCATION LIEN             Effective Date: 08/29/2017
Court: Supreme Court                       Expiration Date: 08/29/2018
                                           Docket Date:08/29/2017
                                           Date Received:09/25/2017

Debtor Info:
NERIS, RAMON
64     CLINTON PLACE
BX NY

Creditor Info:
DEPT OF HOUSING PRESERVATION & DEVELOPMT
100    GOLD ST   6TH FL
NEW YORK    NY       10038-

Attorney:
MATTHEW E SHAFIT ESQ
100    GOLD STREET RM 5W-11
NY NY               10038-

Amount: $46,427.89

COM:09/22/2017-AFFIDAVIT OF SERVICES FILED.
----------------------------------------------------------------
```